PLACE (BEERS v.). See Case No. 1,233.

---

## Case No. 11,202.

PLACE et al. v. The CITY OF NORWICH.

[1 Ben. 89.] [1]

District Court, E. D. New York. Dec., 1866.

PRACTICE — COLLISION — BONDING VESSEL WHERE THE DAMAGES EXCEED HER VALUE—OWNER'S LIABILITY UNDER ACT OF 1851.

1. A steamer bound from New London to New York, met with a collision, from the effects of which she sunk. She was afterward raised and repaired, and was then libelled by a freighter, to recover $8,000 damages for loss of his goods on board. The vessel being in custody in the action, the claimants filed a petition, claiming that the liability of the owners was limited to the value of the vessel and her freight, according to the act of congress of March 3, 1851 [9 Stat. 635], entitled "An act to limit the liability of ship owners." They alleged that the amount of losses exceeded the value of the vessel and freight, and that there was reason to anticipate actions against her to recover amounts exceeding her value, and prayed the court for leave to file a stipulation in the appraised value of the vessel and freight, for the benefit of all persons entitled to liens upon her for losses occasioned by the collision; and that on the filing of that stipulation, the vessel and also her owners might be declared to be discharged from all liability for losses arising out of the collision. The court directed notice to be published for fourteen days, of the time and place of making the application for the order on the petition. Other libellants, having claims in all to the amount of $30,000, appeared, and opposed the application. Held by the court, that the act of 1851 does not authorize the discharging the vessel from the liens created by law, on giving the stipulation tendered. Although it declares a limitation of the liability of the owners of ships, it nowhere undertakes to modify the law which creates a lien upon the ship for cargo lost, or undertakes to regulate or limit the liability of the vessel for such losses, or in any way provides for the enforcement or discharge of that liability, or for the taking of any sort of bond or stipulation for any purpose.

[Cited in The Vivid, Case No. 16,977.]

2. The provision in the fourth section of that act, authorizing the owners to take "appropriate proceedings" for the purpose of apportioning the sum for which the ship owners may be liable among the parties entitled thereto, does not warrant this application.

3. The discharge of the vessel from the liens created by law, as asked for in the petition, could not be obtained by virtue of the act of 1851.

4. A court of admiralty cannot under that act, in an action in rem against the vessel alone by a single freighter, make upon a petition a sum-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

mary order declaring the owners of the vessel free from personal liability to any freighter on filing a stipulation as proposed. Such an order would be neither an assignment of the vessel to a trustee for the benefit of the persons having claims for losses, nor "appropriate proceedings in any court to apportion the sum for which the owners may be liable, among the parties entitled thereto," which are the only forms of proceeding authorized by the act.

[Cited in The City of Norwich, Case No. 2,762; The Epsilon, Id. 4,506; Thomassen v. Whitwell, Id. 13,930; In re Norwich & N. Y. Transp. Co., Id. 10,362.]

5. Such "appropriate proceeding" must be a proceeding in personam. where the parties to be affected are duly brought before the court. and in which a trial can be had on issues properly framed.

6. Such a proceeding would not be within the jurisdiction of an admiralty court. Cootes, Prac. p. 9; The Saracen, 6 Moore, P. C. 74.

[Overruled in The Epsilon, Case No. 4,506.]

7. The English authorities cited, have reference to the English act, which expressly gives to the admiralty court, in such cases, the jurisdiction exercised by the court of chancery.

[Cited in Wright v. Norwich & N. Y. Transp. Co., Case No. 18,086.]

8. The relief sought for the vessel and her owners, could not therefore be afforded under any of the provisions of the act of 1851.

9. The application might be treated as one for a release of the vessel on bail. addressed to the ordinary discretion of the court.

10. The power to release property from arrest on bail, does not depend on any statute, but is one of the inherent powers of the court. The Alligator [Case No. 248].

11. Under the circumstances of the present case, a stipulation in the form tendered, would protect all the rights of the lien creditors, and as effectually release the vessel from all the liens provided for in it, as the ordinary stipulation does from the claims made in the particular libel, which that stipulation is intended to secure.

[Cited in Re New York & W. Steamship Co., Case No. 10,200.]

12. Therefore the application to bond the vessel in this way might be granted.

The steamboat City of Norwich, while on a voyage from New London to New York, on the 18th day of April, 1866, collided with a schooner Gen. Van Vliet—was seriously injured and set on fire thereby, and finally sank. She was afterwards raised and repaired. and was then seized in this action, which was brought by [George Place,] a freighter to recover of the vessel the sum of $8,000 as damages, occasioned by loss of cargo in the collision and fire above mentioned. The steamboat being in the custody of the court in this action, the claimants filed a petition showing the liabilities of the owners to be limited to the value of the vessel and her freight, according to the act of March 3, 1851, entitled "An act to limit the liability of ship owners" (9 Stat. 635), and averring that the amount of losses by this collision and fire exceeded the value of the vessel and the freight then pending, and that there was reason to anticipate actions against her to recover amounts exceeding her value; whereupon they prayed the court for leave to

file a stipulation in the appraised value of the vessel and her freight, such stipulation to be taken for the benefit of all persons who should show themselves entitled to liens upon the vessel for losses occasioned by the collision and fire aforesaid, and that upon the filing of such stipulation the vessel be declared discharged of such liens. And they further prayed, that the owners of said vessel might be declared to be entitled to the benefit of the act of 1851, and be also declared, upon the filing of the stipulation aforesaid, to be discharged from all liability for any losses arising out of the accident in question. Upon the presentation of the petition, notice was directed to be published for fourteen days of the time and place of making the application, at which time several libellants, having filed libels to recover of the vessel some $30,000, appeared and opposed.

Mr. Leveridge and Mr. Owen, for claimants, in support of the application, made the following points:

(1) The facts make out a case which entitles the owners of the steamer to the benefit of the act limiting their liability to the value of the boat and her freight pending (9 Stat. 635). The language of the third section is broad enough to include not only their liability to the owners of the cargo on board the boat, but also their liability to the owners of the schooner and her cargo; and so it has been decided. Moore v. American Transp. Co., 24 How. [65 U. S.] 39; Walker v. Western Transp. Co., 3 Wall. [70 U. S.] 150; Wells v. The Ann Caroline [Case No. 17,389], decided by Judge Nelson in the United States circuit court; The Ariadne [Id. 522], decided by Judge Betts in the United States district court. The exception at the close of the act does not apply to this case. The navigation of Long Island Sound is not "inland navigation." [Moore v. American Transp. Co.] 24 How. [65 U. S.] 1; [Walker v. Western Transp. Co.] 3 Wall. [70 U. S.] 150. Nor is the river Thames or the East river a "river" within that exception. And even if the collision and fire were occasioned by the carelessness of the master and crew of the boat, still it occurred without the knowledge or privity of the owners, and therefore does not affect their rights under the act. The act does not extend to the officers and crew as representing the owners. [Walker v. Western Transp. Co.] Id. 153.

(2) As the owners are entitled to the benefit of the act, the question is as to their remedy against those who claim to enforce against them a greater liability.

(a) If there was but one libellant, the owners would easily avail themselves of the benefit of the act.

(b) In cases where there are several libellants, the fourth section provides that if the vessel and freight is not worth enough to pay all, they shall recover "in proportion to their respective losses."

(c) Each libellant. therefore. in such case, has an interest in the res, which he cannot be de-

prived of by another's recovering a judgment or filing a libel first. The owners are not therefore liable to any one party for more than his proportionate share in the res or its proceeds. 1 Pars. Mar. Law, p. 398.

(d) Even if the question of the limit of the liability could be raised in each action, it would lead to troublesome litigation, and would be unsatisfactory to all. It is for the interest of all that the amount of the fund out of which they are to be paid should be ascertained.

(e) There is no difficulty arising from a want of proper parties, or of jurisdiction. All persons having claims against the boat and her owners might have been made parties as having an interest in her, or the action might be for the benefit of the libellants and all others interested. The Commander in Chief, 1 Wall. [68 U. S.] 43, 51, 52. The libel being in rem, all persons interested, and all the world, are parties to the suit, and bound by the decree made in it. The Mary, 9 Cranch [13 U. S.] 144; Ben. Adm. p. 203; 2 Brown, Civ. & Adm. Law, 112. Moreover, in this case, all parties having claims have been called in by the notice published, and might intervene in this suit (Betts. Adm. Prac. 203), or if they instituted separate suits, such suits would be consolidated with this (The William Hutt, 1 Lush. 25).

(3) As the court has jurisdiction of the suit and possession of the boat, it has power to order her to be delivered to her owners on their giving a stipulation to her full value. It could order her sold, and the purchaser would take her free from all liens. It may retain possession of her till final decree and sale, or may surrender her upon a bond for her value. The Phebe [Case No. 11,066]; The Amalia, 32 Law J. Prob. Div. & Adm. 191. No injustice would be wrought to the libellants by so doing, and all other parties would have a valid bond to the full amount of the owner's liability.

(4) The court may also order the freight money to be brought in, and thus become possessed of the entire fund. The court administers justice on principles of equity, and therefore having jurisdiction of the cause, and possession of the res, it will retain it so as to do justice to all parties. Moreover, the act itself (section 4) gives this court all the power needful to effect its purposes. This motion contemplates the end proposed by this section. Giving such a bond may be regarded as equivalent to acting under the provision authorizing the owners to assign the boat for the benefit of all parties. That proceeding is merely cumulative. The act does not require it to be done. The language is permissive. It does not require the owners to confess the wrong; that may be litigated.

(5) Having such jurisdiction, the court may also by order declare that the vessel and her owners, after filing such stipulation, shall be exempt from all liability for the collision, except under the stipulation. This was so decided by Judge Betts in the case of The Ariadne. It has been so decided also in England under their statute. The Amalia, 32 Law J. Prob. Div. & Adm. 191; 1 Moore, P. C. (N. S.) 471.

Huntley & Place, R. W. Townsend, Martin & Smith, A. McCue, P. S. Crooke, and Dimmick & Perry, for the various libellants, opposed.

BENEDICT, District Judge. The application now made to this court upon this petition is supposed to be authorized by the provisions of the act of 1851. It is novel in the relief sought, and raises questions hitherto but rarely discussed in the courts of this country.

The first question raised is whether the act of 1851 authorizes the relief prayed for, so far as such relief affects the vessel herself, by discharging her from the liens created by law, upon the filing of the stipulation which is here tendered. The answer to this question seems to be obvious when the provisions of the act of 1851 are carefully considered, for it will be seen that that act, although it declares a limitation of the liability of the owners of a ship, nowhere undertakes to modify or declare the law which creates a lien upon the ship for cargo lost or damaged, nor does it undertake to regulate or limit the liability of the vessel for such losses, or in any way provide for the enforcement or discharge of that liability, neither does it anywhere provide for the taking of any sort of bond, or stipulation for any purpose. Still the claimants insist that the provision in the fourth section which authorizes the owner to take "the appropriate proceedings in any court for the purpose of apportioning the sum for which the owners of the ship may be liable, among the parties 'entitled thereto'" should be held to warrant the discharge sought by this proceeding.

But taking a stipulation, and discharging a vessel from the liens on her, is a very different proceeding from a proceeding to apportion among various creditors the sum for which the owners of a vessel may be liable under the act. Releasing a vessel on bail is simply substituting a stipulation in place of the vessel, to save expense, risk and loss. Neither the taking of the stipulation nor the order to discharge, involves the consideration of any question of apportionment of any sum, and it is difficult to suppose that the language of the fourth section was intended to include the well known proceeding of discharging a vessel on bail. It seems therefore quite clear that if this portion of the relief asked for in this petition can be obtained at all, it must be by virtue of other powers than those conferred by the act of 1851.

The next question raised by this petition is, whether a court of admiralty, in an action

like the present, in rem against the vessel alone, by a single freighter, can upon a petition make a summary order or decree, declaring the owners of the vessel free from personal liability to any freighter, upon filing a stipulation for the amount of their liability, as limited by the act of 1851.

Now the act authorizes but two forms of proceeding, one an assignment of the vessel to a trustee for the benefit of the persons having claims for losses, the other, "appropriate proceedings in any court to apportion the sum for which the owners may be liable among the parties entitled thereto."

If these claimants proposed to assign this vessel, now in custody of the marshal, to an officer of the court, for the benefit of the parties entitled to make claim for losses, an order effecting their discharge from further liability could doubtless be made. But they do not propose to assign the vessel or their interest therein. What they do propose is to take the vessel upon giving a stipulation, which is not equivalent to delivering her up to an assignee as provided in this act; and as before remarked in regard to a discharge of the vessel herself, so in regard to a discharge of the owner it must be said that discharging the owners upon a stipulation is not "apportioning the sum for which they may be liable among the parties entitled thereto." But if taking a stipulation, and thereupon granting a discharge of the owners, could be considered one step towards apportioning the sum among the creditors, and so the proceeding, or part of the proceeding authorized by the fourth section of the act, still the mode of procedure here adopted cannot be sustained, for it is not an appropriate proceeding to accomplish the end contemplated by the statute.

This is a petition filed in an action in rem, and seeking a summary order as part of the proceedings in the action; but a proceeding to be an appropriate proceeding for the purpose intended by the act, must in my opinion be a proceeding in personam, where the parties to be affected are duly brought before the court, and in which a trial can be had on issues properly framed. Here the parties before the court, and whom it is sought to bind by the order prayed for, are only before the court so far as regards their right, title and interest in the vessel as lien creditors.

Their liens can undoubtedly be cut off by the sale of the vessel, and the affectation of the vessel in their favor may be intentionally waived or abandoned by them, but I am unable to see how the court in this cause can declare their right of action in personam against the owners to be cut off. If the giving of such a stipulation as is here proposed would be a good defence in any future action, brought by freighters against the owners, it will hardly do upon the petition of these owners to treat this action against the

vessel as such an action, and now give judgment for the defendants accordingly.

Nor would the case be improved if all the parties to be affected were brought before the court and issue duly joined by them; for such a proceeding would be no part of an admiralty cause, and not within the jurisdiction of the admiralty. The general words, "any court," in the fourth section of the act, may give the district court jurisdiction of such an equitable proceeding, but it by no means follows that it can be taken upon the instance side of the court. The jurisdiction of the admiralty, as exercised in every case, is indeed legal and equitable, but it does not follow that every proceeding which a court of equity may entertain, can be taken in a court of admiralty, and I know of no authority for holding that the court of admiralty can entertain a proceeding commenced for the purpose of apportioning among various creditors a common fund. Such a jurisdiction has been expressly denied in the case of The Saracen, 6 Moore, P. C. 74; Coote, Prac. p. 9.

But, further, if this proceeding could be entertained as a proceeding within the admiralty jurisdiction of the court, I see no necessity for making it a part of this suit. The condition of an action in rem, compelled to bear within it, through the stages of this and of the appellate courts, an equity suit, in which the original libellants, with various others, would be defendants, and the claimants the plaintiffs, would be so anomalous, and tend so greatly to deprive the suit in rem of that simplicity and dispatch which properly characterize it, that I should hesitate long before giving my sanction to the practice.

My conclusion therefore is, that the relief here sought for this vessel and her owners, cannot be afforded under any of the provisions of the act of 1851. Nor is this conclusion in conflict with the English authorities cited by the claimants. Those decisions were made under the British act, which differs from the American act in material respects. Thus, after declaring the limitation of the owner's liability, the British act provides as follows (section 514): "In cases where any liability has been * * * incurred by any owner in respect of * * * damages to ships, boats, or goods; and several claims are made or apprehended in respect of such liability, * * * it shall be lawful in England for the high court in chancery * * * to entertain proceedings at the suit of any owner, for the purpose of determining the amount of such liability subject as aforesaid, and for the distribution of such amount ratably among the several claimants, with power for any such court to stop all actions and suits pending in any other court in relation to the same subject matter. And any proceeding entertained by such court may be conducted in such manner, and subject to such regulations, as to making any persons interested parties to the same, and as to the exclusion of any

claimants who do not come in within a certain time, and as to requiring security from the owner, and as to payment of costs, as the court thinks just." These provisions, it will be seen, confer more extended powers than are contained in the American act, and they are exercised by the English admiralty only by virtue of the admiralty court act of 1861 (24 Vict. c. 10, § 13), which declares, that "when any ship or vessel, or the proceeds thereof, are under arrest of the high court of admiralty the said court shall have the same powers as are conferred upon the high court of chancery by the ninth part of the merchants' shipping act of 1854."

It is by virtue of these two statutes that Dr. Lushington has entertained petitions for relief similar to the one now presented, and those cases, if examined, show that such petitions are not received by the English court of admiralty as part of the proceedings in rem, but form independent actions with demurrers and answers. The Wild Ranger, 1 Marit. Law Cas. p. 206. They go up to the privy council independent of any action in rem. The Amelia, Id. 362. They are described in the reports as suits brought by plaintiffs against defendants. The Wild Ranger, Id. 275. The English cases seem therefore rather to sustain than overthrow the view which I have thus far taken of the present application.

This view derives support from the final determination of the supreme court in the case of The Ann Caroline, 2 Wall. [69 U. S.] 538, where "the whole matter of damages being open to revision" (page 546), and the point being expressly taken that the act of 1851 did not apply in an action in rem to limit the recovery to the value of the claimant's vessel and freight, the court held that in an action in rem against a vessel for a collision, although it appeared that the amount of the personal liability of the owners under the act of 1851 was less than the value of the libellant's vessel, the true measure of damages in that action was the value of the libellant's vessel, and that the decree must be for that sum if a stipulation for value to that amount had been given.

The views here expressed make it unnecessary to consider the point raised in opposition to this petition, and decided in 14 Gray, that none of the provisions of the fourth section of the act of 1851 are applicable to cases when the losses have arisen out of a collision.

Thus far I have treated the application before me as a proceeding taken under the act of 851, but it may without injustice to any one be treated as an application for a release on bail, addressed to the ordinary discretionary powers of the court, and the more important portion of the relief sought may be thus obtained. So considered, the motion differs from the ordinary motion for leave to bond only in this, that the claimants, instead of a stipulation which shall be available to the libellant alone, tender a stipulation in the full value of the vessel and her freight, which shall be available for all the libellants who have filed, or may hereafter file, libels in this court, to recover damages caused by this collision and fire, and instead of a discharge which shall release the vessel from the claim of the libellants alone, they seek a discharge which shall release the vessel from all the claims secured by such stipulation.

Now the power to discharge from arrest property seized in a court of admiralty, does not depend upon the provisions of any special statute, but is one of the inherent powers of the court conferred upon it with its other general powers. The Alligator [Case No. 248]. From "motives of public convenience," the claimant is allowed to substitute an equivalent security in place of the res. Coote, Prac. p. 5.

This power is daily exercised in actions in rem, because "a ship is made to plow the sea, and not to rot by the wharf,"—because serious damage to her owners is caused by her detention without benefit, and expenses are thereby increased,—all which may be obviated without injury to the rights of creditors by a delivery on bail. Ben. Adm. p. 246. These considerations which lead to the ordinary discharge on bail, seem to me to press with their full force in favor of the discharge here sought. This vessel is detained from regular trips by the process against her. Her value, together with the amount of her freight, is insufficient to pay the amount of claims likely to be brought against her. A discharge on bail in each case would involve her owners in liability exceeding her value. The Ann Caroline, 2 Wall. [69 U. S.] 550. It is manifest, therefore, that no prudent owner will give stipulations in the ordinary form for each claim. The consequence is, that unless a stipulation in the form tendered can be taken, the vessel must remain in custody until the termination of perhaps a long controversy, to the detriment of every interest concerned.

Some form of stipulation seems to be demanded by the circumstances of the case, and I see no reason why the one proposed will not protect all the rights of the lien creditors, and as effectually release the vessel from all the liens provided for in it, as does the ordinary stipulation from the claim or claims made in the particular libel which such stipulation is intended to secure, which libel often includes several distinct parties, such as owners of a vessel and of the cargo, several seamen of one crew, different sets of salvors, and the like. A somewhat analogous effect is produced by the ordinary stipulation when taken in good faith without fraud or mistake, for a less sum than the whole lien intended to be secured by it. The English bond for latent demands is also analogous.

While, then, the stipulation proposed will secure the end which is required by "public

convenience," and always sought by a court of admiralty, the taking of it, and the consequent release of the vessel, will improve rather than impair the position of the lien creditors. For the vessel is now under proceedings in rem, which must, sooner or later, terminate in a sale under a decree, or a sale as perishable. That sale will cut off all their liens and transfer them to the proceeds in court, reduced as those proceeds will be by the expense of custody and the rapid deterioration of a ship while lying idle. Instead of that fund as their sole resort, if the vessel be discharged on the stipulation tendered, the creditors will have a stipulation as available as the vessel now is, and for its value, with the addition of the amount of the freight. Proper precaution being exercised in the examination of the sureties, and in ascertaining the value of the vessel, which the court will by its order always secure—represented as all creditors will in effect be upon the justification of the sureties and the appraisement of the vessel by the other libellants before the court,—as public a notice of the proposed discharge having been given as is required to be given of a condemnation and sale—it cannot be said that the position of any lien creditor will be impaired by the release of the vessel in the manner proposed.

Nor is it seen that any inconvenience will arise, if the practice here indicated should be adopted; but, the contrary. One effect would be to bring before one court all demands claimed to be liens arising out of the same occurrence, a result certainly desirable if not made necessary by the opinion expressed by the supreme court in the case of The Commander in Chief, 1 Wall. [68 U. S.] 43. Another effect, and one often beneficial to the owners of ships, would be to afford a method by which a ship can be promptly relieved from liens arising out of a collision. In the absence of any such method, every vessel having been in collision must remain subject to all liens thereby created, until the demands shall have been prosecuted, or become stale; and these liens are uncertain in amount and often unknown. They therefore interfere with a sale of the vessel, and form one of the disabilities affecting this class of property which such a discharge on bail will remove, and in a much cheaper and more effective manner than the formality of a collusive sale under decree, to which ship owners have sometimes been driven in the absence of any other method of relief.

In addition to the facts above stated, it also appears in this case that the owners of this vessel are willing to furnish stipulators of unquestioned ability, while they are themselves a corporation with a place of business in this port and abundantly able to respond to any decree that may be rendered. The voyage in question was between New London and this port, where the persons having claims upon the vessel may be supposed to be, or to be represented. Public notice of the intention to apply for the release of the vessel in this manner has moreover been given by special advertisement. There is, therefore, little danger of surprise, certainly none of detriment, to the lien creditors not actually before the court, if this relief be granted.

A single question remains to be determined, that is, as to the time when the value of the vessel is to be taken for the purpose of fixing the amount of the stipulation. Were the vessel of the value now that she was immediately prior to the accident, that value would be taken, but it is suggested by the papers before me that she has been altered, and her value increased since that time by the act of her owners, and it may be that her value has changed by reason of a change of the market, and therefore, under the views which I have above expressed, a question arises whether the lien creditors are not entitled to have the benefit of any increase of her value. See The Aline, 1 W. Rob. Adm. 119; Coote, Prac. 4. This question can be more safely disposed of upon the settlement of the order, when the facts attending the repairing of the vessel may be shown. It is accordingly reserved until that time.[2]

----

[2] This question of value was not made the subject of dispute, but agreed upon between the parties. The stipulation which was given under the above decision was as follows: It set forth the filing of the libel by Place, and the arrest of the vessel under the process; the subsequent filing of other libels; the valuation of the vessel at $70,000; the filing of a claim by the owners in each of the suits, and their application to have the vessel discharged on giving this stipulation. It then proceeded in the following words: The parties hereto agreeing, that the said claimants and owners, the Norwich and New London Transportation Company, parties hereto, in all cases in which libels may hereafter be filed in this court against the said steamboat to enforce liens or claims upon or against the said steamboat by reason of said collision and fire, upon notice to them or their proctor, to be given by publication or otherwise, as the court may direct, will, within the time limited by the court, enter an appearance without service of process, which is hereby waived, and that in default of such appearance such proceedings may be had and such decree made in such causes respectively, as to the court may seem proper, and with like effect as if said owners and claimants, and their sureties, the parties hereto, had appeared and consented thereto.

And the parties hereto further consenting and agreeing, that they will, to the extent of the amount of this stipulation, abide by and perform all orders and decrees of this court, made or to be made in any proceeding taken or to be taken in this court, or in any appellate court, to secure the payment of any lien upon the said steamboat, her engines, &c., in place of which this stipulation is substituted, which may have arisen by reason of the collision and fire above referred to, and that in case of default or contumacy on the part of the said owners or claimants, or their sureties, execution or executions, not in all to exceed the amount of this stipulation for the value of said steamboat, viz., $70,000, with interest thereon from this date, may issue against their goods, chattels, and lands.

Now, therefore, the condition of this stipulation is such, that if the stipulators undersigned shall, upon the final order or decree of the said

I have been thus particular in considering this application, on account of its importance, and also because it was claimed on the hearing that an order made by the judge of the Southern district as late as February, 1866, in the case of The Ariadne [Case No. 522], indicates an opinion on his part that the act of 1851 confers upon the district court in admiralty, the power to grant all the relief here prayed for. No opinion was delivered by that learned judge in the case referred to, and it does not appear that his intention was called to the difference between the English and American statutes. However this may be, the result which he arrived at, so far as it affected the vessel before him, which is the substantial portion of the relief sought to be obtained, was the same as that arrived at by me, and the practice of the two courts will therefore coincide.

An order may be entered in accordance with these views, which will be settled before me on notice to all the libellants who have filed libels against this vessel, in this court.

[NOTE. The vessel was discharged under the stipulation, and the cases of all the parties who came in were heard together, a decree entered for the respective libelants, and a reference ordered, to ascertain and report the amount of the damages. Case No. 2,760. Exceptions were taken to the report of the master, which were overruled. Id. 2,761. In 1872 the supreme court rendered a decision in the case of Norwich & N. Y. Transp. Co. v. Wright, 13 Wall. (80 U. S.) 104, on an appeal from the circuit court for the district of Connecticut. See Case No. 18,087, affirming Id. 18,086. By leave of the court, the Norwich & New York Transportation Company commenced a proceeding against the City of Norwich. It was held that the petitioners were entitled to an order directing an appraisement of the value of their interest in the City of Norwich, and it was referred to a commissioner to hold such appraisement, and report the value and amount to the court. Id. 2,762. On the coming in of the commissioners' report, exceptions were taken thereto, which were overruled. Case unreported. A final decree was entered, distributing the fund in court, and discharging the petitioners from further demands. Case unreported. An appeal was then taken to the circuit court, which affirmed the decree of the district court. Case unreported. On appeal to the supreme court the decree of the circuit court was affirmed. 118 U. S. 468, 6 Sup. Ct. 1150.]

district court made and entered in the above suit, and in any suit or proceeding commenced, or which may be commenced, in said court, to establish and enforce such lien or claim upon the said steamboat, &c., by reason of the collision and fire in the aforesaid libel and in the said petition mentioned, or upon the final decree of any appellate court to which any or either of such suits or proceedings may be carried, and upon notice of such order or decree to the parties hereto, or either of them, or to the proctor for the claimants, abide by all interlocutory orders and decrees of the court, and pay the money awarded to the respective parties in and by all such final decrees rendered in this court or the appellate court, (if any appeal intervene,) no exceeding in the aggregate the said sum of $70,-000, and interest, then this stipulation to be void, &c.